IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGLAS CARLSON,<br><br>Plaintiff,<br><br>vs.<br><br>NTN BUZZTIME, INC., ALLEN WOLFF, MICHAEL GOTTLIEB, RICHARD SIMTOB, and SUSAN MILLER,<br><br>Defendants. | Case No. 1:21-cv-00047<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Douglas Carlson ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of NTN Buzztime, Inc. ("NTN" or the "Company") brings this action against the Company and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §§ 240.14a-9, 244.100, & 229.1015(b)(4), arising out of material omissions and misstatements made in connection with a Form S-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") on October 2, 2020.

2. On August 12, 2020, NTN and Brooklyn ImmunoTherapeutics, LLC ("Brooklyn") entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement"), pursuant to which BIT Merger Sub, Inc., a wholly-owned subsidiary of NTN, will merge with and into Brooklyn, with Brooklyn surviving as a wholly-owned subsidiary of NTN (the "Proposed Transaction").

3. Under the terms of the Merger Agreement, Brooklyn's equity holders will exchange their equity interests for shares of NTN common stock such that NTN's stockholders as of immediately prior to the Merger's effective time, will own between 3.26% and 5.92% of the outstanding common stock of NTN on a fully diluted basis immediately after the effective time of the Merger ("Exchange Ratio").

4. As part of the larger transaction scheme, NTN entered into an asset purchase agreement on September 18, 2020 with eGames.com (the "Asset Purchase Agreement"), pursuant to which NTN agreed to sell all of its right, title and interest in and to the assets relating to NTN's business of licensing its interactive entertainment network and services and the tablets and related equipment to eGames.com.

5. Because the Proposed Transaction requires stockholder approval, but Brooklyn is a private corporation, the Board has an obligation to ensure that all material information surrounding these private corporations is disclosed to the Company's stockholders so that they can properly exercise their corporate suffrage rights. Unfortunately, the NTN Board has failed to do so here.

6. On October 2, 2020, Defendants authorized the filing of the Registration Statement with the SEC designed to convince NTN stockholders to approve the Proposed Transaction. The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the financial projections for Brooklyn and NTN, (ii) the valuation analyses performed by the Company's financial advisor, Newbridge Securities Corporation ("Newbridge"); and (iii) the process leading to the Merger Agreement.

7. The special meeting of NTN stockholders to vote on the Proposed Transaction is expected to be scheduled in the next few weeks (the "Stockholder Vote"). Therefore, it is imperative that the material information omitted from the Registration Statement be disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

8. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to NTN stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

9. Plaintiff is, and has been at all relevant times, a stockholder of NTN.

10. NTN is a Delaware corporation with its principal executive offices located at 6965 El Camino Real, Suite 105-Box 517, Carlsbad, California 92009. The Company's common stock trades on the NYSE under the ticker symbol "NTN."

11. Defendant Allen Wolff ("Wolff") is, and has been at all relevant times, the Chief Executive Officer and Chairman of the Board of NTN.

12. Defendant Michael Gottlieb ("Gottlieb") is, and has been at all relevant times, a director of NTN.

13. Defendant Richard Simtob ("Simtob") is, and has been at all relevant times, a director of NTN.

14. Defendant Susan Miller ("Miller") is, and has been at all relevant times, a director of NTN.

15. The defendants described in ¶¶ 11-14 are referred to herein as the "Individual Defendants."

16. Collectively, NTN and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

18. Personal jurisdiction exists over each Defendant because each has sufficient

3

minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play, substantial justice, and under Section 27 of the Exchange Act.

19. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the New York Stock Exchange within this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

20. On August 13, 2020, the Company and Brooklyn issued a press release announcing the Proposed Transaction. The press release read in relevant part:

> CARLSBAD, CA AND BROOKLYN, NY, AUGUST 13, 2020, — NTN Buzztime, Inc. (NYSE American: NTN) and Brooklyn ImmunoTherapeutics LLC ("Brooklyn"), a privately-held biopharmaceutical company focused on exploring the role that cytokine-based therapy can have in treating patients with cancer, today announced that the companies have entered into a definitive merger agreement. If approved by the stockholders of NTN Buzztime and the beneficial holders of the Class A membership interests of Brooklyn, Brooklyn will merge with a wholly-owned subsidiary of NTN Buzztime in an all-stock transaction. Following closing, which the parties expect will occur in the fourth quarter of 2020, the combined company will continue under the Brooklyn ImmunoTherapeutics name and will focus on the advancement of Brooklyn's program to further develop its cytokine-based drug for the treatment of various cancers.
>
> Brooklyn's chief executive officer Ron Guido, MS, MS Pharm. Med., stated, "We are pleased to reach an agreement with NTN Buzztime for the proposed merger. This provides us with the opportunity, once the merger is completed, to have our shares traded in the public market and to expand our investor base, which we believe will increase our ability to advance our clinical development program exploring the treatment of certain cancers using derived cytokines. We expect this merger will also enable us to expand our resources and expertise to build momentum in our drug development program. We believe that the merger will provide benefit to both the members of Brooklyn and the stockholders of NTN Buzztime."
>
> Mr. Guido continued: "Brooklyn is focused on exploring the role that IRX-2, a cytokine-based investigational therapy, can have on the immune system in treating patients with cancer. IRX-2's active constituents, namely Interleukin-2

(IL-2) and other key cytokines, are postulated to signal, enhance and restore immune function suppressed by the tumor, thus enabling the immune system to attack cancer cells. Unlike existing recombinant IL-2 therapies, IRX-2 is naturally derived from human blood cells. This may potentially promote better tolerance, broader targeting, and natural molecular conformation leading to greater activity, and permit low physiologic dosing rather than high doses needed in existing IL-2 therapies. Our ongoing development program is specifically investigating use of IRX-2 in neoadjuvant (pre-surgical) and adjuvant (post-operative) treatment for advanced head and neck squamous cell cancer. IRX-2 has received both fast track designation and orphan drug designation from the FDA for this indication. Potential use of our product candidate in other cancer indications is also being evaluated in several investigator-sponsored trials. Finally, we are currently modifying our manufacturing process to allow us to develop additional drugs with a variety of cytokine mixtures to expand our product offerings."

Allen Wolff, chief executive officer of NTN Buzztime, stated, "This transaction reflects the continuing commitment of our management team and board of directors to deliver value to our stockholders. Following a thorough review of strategic alternatives, we determined that the proposed merger with Brooklyn is in the best interest of our stockholders. We are also continuing to explore the sale of substantially all of the assets of our current business to provide additional capital and to allow the combined company to focus exclusively on Brooklyn's business following the merger. While we are in discussions with multiple parties who are interested in purchasing those assets, no definitive agreement has been entered into to date."

**About the Proposed Merger**

Under the merger agreement, immediately following the closing of the merger, the members of Brooklyn collectively will own 94.08% of the outstanding common stock of the combined company and NTN Buzztime stockholders immediately prior to the closing of the merger collectively will own 5.92% of the outstanding common stock of the combined company, which percentages are subject to adjustment based on Brooklyn's cash and cash equivalents and NTN Buzztime's net cash balance at the closing, all as more particularly set forth in the merger agreement.

The merger agreement contains customary representations, warranties and covenants made by NTN Buzztime and Brooklyn, including covenants relating to both parties using their best efforts to cause the transactions contemplated by the merger agreement to be satisfied, covenants regarding obtaining the requisite approvals of NTN Buzztime stockholders and the beneficial holders of the Class A membership interests of Brooklyn, covenants regarding indemnification of directors and officers, and covenants regarding NTN Buzztime's and Brooklyn's conduct of their respective businesses between the date of signing of the merger agreement and the closing. The merger agreement

also contains certain termination rights for both NTN Buzztime and Brooklyn, and, in connection with the termination of the merger agreement under specified circumstances, NTN Buzztime and Brooklyn may be required to pay the other party a termination fee.

As a condition to the closing of the merger, Brooklyn has agreed that it will not have less than $10 million in cash and cash equivalents and not more than $750,000 of indebtedness for borrowed money at the closing. Certain beneficial holders of Brooklyn's Class A membership interests have entered into contractual commitments to invest $10 million into Brooklyn immediately prior to the closing of the merger. Further, as a condition to the closing of the merger, NTN has committed that the deficit in its net cash at the closing, as calculated under the merger agreement, will not exceed $3 million.

The combined company, led by Brooklyn's current management team, is expected to be named "Brooklyn ImmunoTherapeutics, Inc." and be headquartered in Brooklyn, NY. After the closing, the combined company is expected to trade on the NYSE American market under a new ticker symbol.

The merger agreement has been unanimously approved by the board of directors of NTN Buzztime, upon the recommendation of its strategic committee, and by the managers of Brooklyn. The NTN Buzztime board of directors have also recommended to NTN Buzztime's stockholders that they vote to approve issuance of the shares to the members of Brooklyn pursuant to the merger agreement, and the managers of Brooklyn have recommended to the beneficial holders of the Class A membership interests of Brooklyn that they approve the merger agreement and the merger. The transaction is expected to close in the fourth quarter of 2020, subject to approvals by the requisite stockholders of NTN Buzztime and beneficial holders of the Class A membership interests of Brooklyn described above, the continued listing of the combined company on the NYSE American, each of the company's [sic] meeting its capitalization or net cash condition, as applicable, and other customary closing conditions.

In connection with the transaction, Maxim Group LLC is serving as the financial advisor for Brooklyn and Newbridge Securities Corporation is serving as the financial advisor to NTN Buzztime. Further, Breakwater Law Group, LLP and Sheppard, Mullin, Richter & Hampton LLP are serving as legal counsel to NTN Buzztime and Akerman LLP is serving as legal counsel to Brooklyn in connection with the transaction.

21.     Thereafter, on October 2, 2020, Defendants filed with the SEC the Registration Statement which called for a vote to be held in connection with the issuance of securities in the Merger. The Registration Statement purports to describe the material facts regarding the

background of the Proposed Transaction and the negotiations which led to the entry of the Merger Agreement.  Instead, the Registration Statement highlights the lack of complete disclosure by the Board.

22.     Defendants then caused the filing with the SEC of amendments to the Registration Statement, including Amendment Number 2 on December 22, 2020, that did not resolve the disclosure allegations detailed below.

**The Registration Statement Misleads NTN Stockholders by Omitting Material Information**

23.     In seeking to convince the stockholders of NTN to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Registration Statement with the SEC on October 2, 2020, containing the recommendation of the Board. Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement, designed to convince stockholders to vote in favor of the Proposed Transaction, misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

24.     Specifically, as discussed below, the Registration Statement omits material information regarding: (i) NTN and Brooklyn's financial projections; (ii) the financial analysis conducted by the Company in approving the Proposed Transaction; and (iii) the background of the merger process.  If disclosed, this information would significantly alter the total mix of information available to NTN's stockholders.

*Material Omissions Concerning the Projections for NTN*

25.     As noted in the Registration Statement, NTN provided its financial advisor Newbridge with financial forecasts relating to the business, earnings, cash flow, capital raises and prospects of NTN.

26.     However, the Registration Statement omits these forecasts for NTN entirely. These projections are the most reliable indicator of future stockholder value and this omission materially

misleads NTN stockholders as to the value of the Proposed Transaction, and leaves them with nothing reliable to inform their vote.

27. Similarly, the Registration Statement omits the free cash flow projections of Brooklyn that were provided to Newbridge. These projections were used in the discounted cash flow analysis of Brooklyn prepared by Newbridge, which was touted to demonstrate the fairness of the Proposed Transaction.

### *The Financial Analysis Underlying Approval of the Proposed Transaction*

28. The NTN Board determined that the Proposed Transaction was fair, in part based on the analysis and fairness opinion provided by Newbridge. But the Registration Statement omits material information concerning these financial analyses, including the inputs and results of the *Comparable Public Company Analysis*, *Comparable M&A Transactions Analysis*, and *Discounted Cash Flow Analysis*.

29. With respect to the *Comparable Public Company Analysis*, the Registration Statement must disclose: (i) the bases for selecting each company observed; and (ii) all other inputs and assumptions underlying the calculated range of implied total equity values for Brooklyn.

30. With respect to the *Comparable M&A Transactions Analysis*, the Registration Statement must disclose: (i) the bases for selecting each transaction observed; and (ii) all other inputs and assumptions underlying the calculated range of implied total equity values for Brooklyn.

31. With respect to the *Discounted Cash Flow Analysis* for Brooklyn, the Registration Statement fails to disclose: (i) the free cash flow projections for Brooklyn; (ii) the assumptions for applying a perpetuity growth rate of 1.0%; (iii) the inputs and assumptions for utilizing a weighted average cost of capital of 18.7%; (iv) the reasons for utilizing the weighted average cost of capital method; (v) the terminal value; (vi) the discount rates and assumptions for utilizing those discount rates; and (vii) all other inputs and assumptions underlying the Proposed Transaction.

### *The Background of the Merger Process*

32. Finally, the Registration Statement states that the Company entered into confidentiality agreements with other bidders during the process. But the Registration Statement fails to disclose whether the bidders were subject to standstill agreements and whether they contained "Don't Ask, Don't Waive" ("DADW") provisions. The failure to plainly disclose the existence of standstill and DADW provisions in the confidentiality agreements creates the false impression that any company could have made a superior proposal. If there are confidentiality agreements containing standstill or DADW provisions, then those parties could only make a superior proposal by breaching the agreement. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded to be highly material.

33. In short, without disclosure of all of these material facts, the Company's stockholders may be lured into approving a Proposed Transaction that is designed to benefit management rather than the stockholders.

34. Defendants knew or recklessly ignored the fact that this crucial information was omitted from the Registration Statement. Defendants were in possession of the omitted information at all relevant times, and were on notice that this information was not contained in the Registration Statement. Accordingly, these omissions have occurred in bad faith.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NTN**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false

9

or misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. NTN is liable as the issuer of these statements.

65. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

66. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

68. The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of NTN within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NTN and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the

power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 4, 2021          **LEVI & KORSINSKY, LLP**

By: /s/ *Sebastiano Tornatore*
Shannon L. Hopkins (SH-1887)
Sebastiano Tornatore (ST-0304)
55 Broadway, 10th Floor
New York, NY 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: shopkins@zlk.com
      stornatore@zlk.com

- and -

Donald J. Enright (to be admitted pro hac vice)
Elizabeth K. Tripodi (to be admitted pro hac vice)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
      etripodi@zlk.com

*Attorneys for Plaintiff*